IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 5, 2005 Session

**STATE OF TENNESSEE v. HAROLD L. CASSELL**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-A-292     J. Randall Wyatt, Jr., Judge**

_____

**No. M2004-01784-CCA-R3-CD - Filed August 5, 2005**

_____

The defendant, Harold L. Cassell, entered an agreed plea to domestic assault, a Class A misdemeanor, and applied for judicial diversion, pursuant to Tennessee Code Annotated section 40-35-313.  The trial court imposed a sentence of 11 months and 29 days to be served on probation and denied the application for judicial diversion.  On appeal, the defendant challenges the denial of judicial diversion.  Upon review, we reverse the judgment of the trial court and grant judicial diversion.  The cause is remanded for the imposition of conditions of the probationary term.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Reversed and Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which J.C. MCLIN, J., joined. DAVID H. WELLES, J., filed a dissenting opinion.

James Robin McKinney, Jr., Nashville, Tennessee, for the Appellant, Harold L. Cassell.

Paul G. Summers, Attorney General & Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and James D. Sledge, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The defendant in this case stands convicted of domestic assault.  *See* Tenn. Code Ann. § 39-13-111 (2003).  He was charged originally with aggravated assault of his wife, *see id*. § 39-13-102, but pursuant to a plea agreement with the state, he submitted a guilty plea to the lesser charge. The factual basis for the plea appears in the transcript of the plea submission hearing, included in the record before us.

> GENERAL SLEDGE: . . . On July the 2nd of 2003, Metro Police
> Officer George Frogge was summoned to 5016 West Durrett Drive
> in Nashville, Davidson County.  Upon arrival, he was informed that

the complaining victim, Mrs. Ruth Cassell, was taken to Southern Hills Hospital Emergency Room.

The officer called for Detective Joe Towers in Domestic Violence. And together, they interviewed the complaining victim at the hospital. She told them, at that time, that once she told the defendant that she wanted a divorce, he got mad and began hitting her in the face. The officers observed and took photographs of large bumps to her forehead, over her right eye. She had bruising around her neck in the form of fingerprints, a laceration to her chin and scratches to her upper chest and left shoulder. Photographs were taken of this and would have been submitted at trial.

Pursuant to the plea agreement, the defendant was to receive a sentence of 11 months and 29 days. The parties stipulated that the defendant was eligible for judicial diversion; therefore, the only sentencing decision reserved for the trial court was whether the defendant should be placed on judicial diversion as opposed to traditional probation. The court conducted a separate hearing on this matter at which time the defendant and the victim testified.

The defendant testified that he was sorry about his actions and accepted full responsibility. The defendant had never been previously arrested and had no criminal history, as corroborated by a certification of the Tennessee Bureau of Investigation. The defendant had already contacted his probation officer and scheduled an initial meeting.

The defendant had attended Middle Tennessee State University (MTSU) until his senior year, when he took a leave from college. He planned to return to MTSU and complete the hours needed to graduate. He testified that he was an active member of Two Rivers Baptist Church. On his own initiative, the defendant had completed an anger-management class and had participated in several counseling sessions.

The defendant described his physical and mental health as good. He testified that he had never used drugs and that he had worked steadily for many years. At the time he testified, he was employed by Wal-Mart on the maintenance staff. Since his arrest, he and his wife had divorced, and he had not communicated with or contacted her. The defendant had not violated the law or been arrested since the assault.

On cross-examination, the defendant testified that three years earlier, while he and his wife were living in Indianapolis, his wife confessed to a sexual liaison with a co-worker. The defendant said that he wanted to leave but that his wife called E-911 and reported that he was threatening to commit suicide. When the police arrived, they transported the defendant to a hospital where he was evaluated and released.

The state concluded its examination of the defendant by introducing, over defense objections, photographs of the victim's injuries. The defendant admitted to causing the photographed injuries and admitted that in the past he had studied martial arts for which he achieved a black belt.

The victim testified that she and the defendant were married four and one-half years. The victim identified her medical records from the hospital where she was treated for the injuries that the defendant had inflicted. The victim testified that she sustained a head injury, for which she was currently seeing a neurologist. Although she testified that her foot had a hairline fracture, the emergency room discharge report states, "You have a sprained ankle. This is a tearing of the ligaments that hold the joint together. There were no broken bones seen on the X-ray." The victim testified that she had been diagnosed with rheumatoid arthritis in her neck area where the defendant had strangled her, and a disc in her back was possibly injured because of how hard she was shaken and banged against the wood floor. These claims were unsupported by medical diagnoses or opinions.

The victim explained why she opposed the defendant receiving judicial diversion. She spoke of her permanent medical injuries from the attack, and she described being afraid of the defendant.

> I did him no harm. And when I'm with my family, and they wake me up, I jump and I scream out of my sleep, because I'm afraid somebody's going to kill me. . . . And I'm sure he is sorry, but the thing is that it happened to me. I have to look over my corner -- the corner of my shoulder every time I, even, walk down the street in daylight. He doesn't have to worry about that. . . . And I -- I don't think it would be fair for probation to be erased. . . .

After hearing the testimony, the trial court issued its ruling and denied placing the defendant on judicial diversion. The court began its ruling by acknowledging that the defendant appeared to be genuinely sorry and remorseful. The court then continued,

> [T]he Court believes in this case that there's some accountability that has to be present. This man is involved in this thing. He's pled guilty. He's been placed on probation on the state's recommendation. I think to further just treat this as if it didn't even happen is to depreciate the seriousness of it, which I don't think is not serious. I think it is serious. . . .
>
> So the Court is of the opinion . . . the circumstances of the offense, and -- and the past circumstances, Indianapolis, wherever it may be, that giving probation to this man is . . . more than adequate,

in terms of the consideration that needs to be given as a first offender.

Aggrieved of the sentencing decision, the defendant has appealed and claims that the trial court erred by not granting judicial diversion.

"Judicial diversion" is a reference to Code section 40-35-313(a)'s provision for a trial court's deferring proceedings in a criminal case. *See* Tenn. Code Ann. § 40-35-313(a)(1)(A) (2003). The result of such a deferral is that the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must be found -- or plead -- guilty to an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(I). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A).

Eligibility, however, does not automatically translate into entitlement to judicial diversion. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). The statute states that a trial court "may" grant judicial diversion in appropriate cases. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2003) (court "may defer further proceedings"). Thus, whether an accused should be granted judicial diversion is a question entrusted to the sound discretion of the trial court. *Bonestel*, 871 S.W.2d at 168.

"Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion." *State v. Cutshaw*, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997). Accordingly, the relevant factors related to pretrial diversion also apply in the judicial diversion context. They are:

> [T]he defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*Id.* at 344; *see State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993). Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. *Bonestel*, 871 S.W.2d at 168. The court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. *Id.*

-4-

On appeal, this court must determine whether the trial court abused its discretion in failing to sentence pursuant to the statute. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168. Accordingly, when a defendant challenges the denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168.

The defendant argues that the trial court abused its discretion because it improperly assigned controlling weight to the circumstances and seriousness of the offense as grounds to deny judicial diversion when all other criteria supported diversion. Although vague, the trial court's remarks reasonably can be interpreted as agreeing that the defendant possessed numerous favorable attributes supporting the award of judicial diversion, and the record clearly shows the existence of those attributes. The record does not, however, reflect why the trial court believed that the "seriousness" of the offense outweighed all other factors.

Domestic assault is unquestionably a "serious" offense. However, as observed in *State v. Curry*, 988 S.W.2d 153, 158 (Tenn. 1999), "The facts and circumstances of nearly all criminal offenses are by definition serious," and "only by analyzing all of the relevant factors, including those favorable to the defendant, can appropriate candidates for this legislative largess be identified in a manner consistent with the purpose of the . . . diversion act." As things presently stand, the offense of domestic assault is not punishable as a felony; it is graded as a Class A or B misdemeanor. Whether this statutory classification depreciates the seriousness of the criminal conduct is a question that must be directed to the legislature, not the courts.

The state argues that in denying judicial diversion, "the trial court may look behind a plea agreement and consider the true nature of the offense committed." *State v. Rufus Steven Johns*, No. M2002-00599-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Nashville, Dec. 31, 2002). The state's legal assertion is correct, but even so, piercing the plea-agreement veil in this case does not reveal more egregious conduct. Granted the defendant was originally charged with aggravated assault. *See* Tenn. Code Ann. § 39-13-102(a) (2003). Aggravated assault, in the context of this case, would have been of the "serious bodily injury" mode. *See id.* §§ 39-13-102(a), -11-106(a)(34).

The Code defines "serious bodily injury" as bodily injury that involves:

(A) A substantial risk of death;

(B) Protracted unconsciousness;

(C) Extreme physical pain;

(D) Protracted or obvious disfigurement; or

(E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]

*Id*. § 39-11-106(a)(34). The state's factual recitation at the plea submission did not establish that the victim had sustained serious bodily injury, as opposed to simple bodily injury. The state described the injuries as consisting of "large bumps to her forehead, over her right eye," "bruising around her neck in the form of fingerprints," "a laceration to her chin," and "scratches to her upper chest and left shoulder." Nor do the victim's medical records that were introduced establish serious bodily injury. The intake form reports the victim's symptoms as "possible LOC [loss of consciousness] for a couple of seconds," "swollen feeling head & ankle," and "0 numbness or tingling." The nurse's notes show that the victim was admitted at 15:08, that "pt has small laceration on chin" and "swelling noted on pt forehead," and that the victim was discharged at 17:30 "to home w/ scripts & pain med." The emergency room discharge report states that "no broken bones [involving the ankle were] seen on the X-ray."

The record in this case contains an oversized, closeup color photograph of the victim's face and neck. The state writes on appeal that the photograph depicts, *inter alia*, "a large cut on the victim's jaw." We disagree. The blood along the victim's jaw is a dried blood smear emanating from a "small laceration" on the victim's chin, just as described in the nurse's notes. To be sure, the victim in this case sustained bodily injury, but the photographic evidence, in our opinion, does not support a finding of serious bodily injury.

We are mindful that the victim testified that she was seeing a neurologist and that she had rheumatoid arthritis in her neck where the defendant had strangled her. This testimony falls short of establishing the defendant's assault as proximate causation for neurological or orthopaedic injuries, if any. Without more, and in the absence of any explanatory medical evidence, testimony, or records, this testimony is incapable of reliable evaluation. Consequently, we are unable to conclude that the record contains substantial evidence of the seriousness of the offense such as to outweigh all other factors favoring judicial diversion.

In conclusion, the record does not contain substantial evidence of the seriousness of the offense such as to outweigh all other factors favoring judicial diversion. Accordingly, we reverse the judgment of the trial court and remand with instructions that the defendant be placed on judicial diversion.[1] *See, e.g., State v. Jared Singleton*, No. M2002-02392-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App. Nashville, Mar. 5, 2004) ("When the trial court fails to place reasons for denial of [judicial] diversion on the record, . . . this court must review the entirety of the evidence to 'determine whether the trial court reached the correct result, notwithstanding its failure to explain its reasoning.'").

---

[1] Our disposition makes it unnecessary to reach the defendant's second issue that the trial court should not have admitted and considered the photographs of the victim's injuries. The trial court was well within its authority to receive and consider this type of evidence. We simply do not believe that this evidence demonstrated the "seriousness" of the offense to such a degree as to warrant the denial of judicial diversion.

_____

JAMES CURWOOD WITT, JR., JUDGE